Nott, J.,
delivered the opinion of the court:
The decree in this case was rendered in April, 1893 (28 C. Cls. R., 281). Its general purpose was to determine and declare the rights of the complainants in the common property of the Cherokee Nation. Its immediate subject of jurisdiction was a fund of $6.00,000, made up of two sums of $300,000 each, which had been derived, one from the rental and the other from the sale of the public domain of the nation. Accordingly, the decree declared that the complainants were citizens of the Cherokee Nation equally with those who were Cherokees by blood, and equally entitled to participate in a fund derived from the common property. With regard to the specific fund before the court, it adjudged that “the whole, number of Cherokee citizens of all descriptions” was 26,771, and that the number of the Delawares was 759, and, consequently, that their proportionate part of the fund was $17,011. This decree was carried to the Supreme Court by appeal of the defendants and affirmed. The complainants rested content and did not appeal.
They now seek to enlarge and change the decree in four particulars by motion.
1. The first motion of the complainants which will be considered is to extend the decree to a fund that was not in existence when the case was formerly before the court, the fund of $8,300,000, derived from the sale of the Cherokee Outlet to the United States. The jurisdictional act is broad enough to embrace this fund. (Act 1st October, 1890, 26 Stat. L., p. 638.) “To hear and determine what are the just rights in law or in 'equity of the Shawnee and Delaware Indians, who are settled and incorporated into the Cherokee Nation, ” and “to recover from the Cherokee Nation all moneys due, either in law or equity, and unpaid to the said Shawnees, Delawares, or freed *174 men, which the Cherokee Nation have before paid out, or may-hereafter pay, per capita, in the Cherokee Nation, and which was, or may be, refused to or neglected to be paid to the said Shawnees, Delawares, or freedmen by the Cherokee Nation, out of any money or funds which have been, or may be, paid into the treasury of, or in any way have come, or may come, into the possession of the Cherokee Nation, derived from the sale, leasing, or rent for grazing purposes on Cherokee lands west of 96° west longitude, and which have been, or may be, appropriated and directed to be paid out per capita by the acts passed by the Cherokee council” are the effective words of the statute. A new suit can not now be brought under the statute, and it is proper for the court to give the requisite relief so long as the case remains open and within its jurisdiction.
But this extension of the decree must be strictly according to the decision both as regards the law and the facts. It being conceded that a new fund has come into existence which might have been included in the decision, if it had existed in time, the decision may be applied to it, but no new issues, either of law or fact, can be determined by the court upon a motion of this kind. If there is to be a new decision there must be a new petition, a new trial, a new decree, and with it, for the defendants, a new right of appeal.
2. The second thing which the complainants request the court to do is to change the basis of the recovery awarded by the decree from $22.41 to $29.65 per capita.
The decision in this case, as has been said, related to a fund of $600,000. The court held that the claimants were entitled to participate in that fund, and the decree awarded to them the proportionate part of the fund which they were legally and constitutionally entitled to receive. In consequence of the defendants having distributed the whole of that fund among Cherokees, to the exclusion of the Delawares, Shawnees, adopted whites, and freedmen of the nation, each individual native Cherokee received more than he was legally and constitutionally entitled to. The complainants now seek to amend the decree so that it shall award to each Delaware the same amount that was by distribution paid to each Cherokee.
Whether the facts will justify the court in changing the basis of the recovery is a new issue of fact. Whether the jurisdictional act will authorize the court to award to the com *175 plainants a larger proportion of the fund than they were legally entitled to is a new question of law. It is by no means clear that this request would have been allowed if it had been originally brought before the court, or if it were now presented on a retrial of the case. It is understood by the court that money enough has been withheld by the United States from moneys due to the Cherokee Nation to satisfy all of the recoveries which maybe had by the Delawares, Shawnees, and freedmen. After these three parties complainant have been fully paid, the surplus will go to the Cherokee Nation. If the court should now award to these complainants more than they are legally entitled to it may be that the Oherokees would receive less than they will be entitled to.
The case does not stop at the $600,000 fund. To that fund there has been added another of $6,640,000, making, for the subject of present consideration, a fund for distribution of $7,240,000. This new and entire fund ma.y be regarded as being owned by five parties. If the court awards to the Delawares all that they are legally entitled to, to the Shawnees all that they are legally entitled to, to the freedmen all that they are legally entitled to, it seems to follow that the remaining parties will receive no more than they are legally entitled to when they receive what is left. These questions, therefore, are questions which involve investigation and consideration, and it is manifest that they should have been presented to the court when the whole case was under investigation and consideration.
The court is of the opinion that this request can not now be considered. The complainants rested content with the decree.
They signified their acceptance, first, by making no application to change it; second, by taking no appeal. The case was taken to the Supreme Court by the other party, and it comes back to us with the decree set forth in extenso and the mandate that “ the same is hereby affirmed.” This court, therefore, can not now make a new decision affecting the legal rights of the parties which will materially increase the amount of the recovery.
3. The third request of the complainants is that the court will change the decree by changing the number of the parties from 759 to 871.
*176 In tbe determination of this case, 26,771 was taken as the whole number of Cherokee citizens of all descriptions and 759 as the number of the Delawares. From those elements a fund was “ ascertained, to wit, the sum of $17,011, to be paid by the treasurer of the Cherokee Nation or by the Secretary of the Interior of the United States to the individual Delawares, per capita, who would have been entitled to the same if the unconstitutional restrictions and discriminations in said statutes had not existed.”
The question, therefore, which was determined by the decree was not the absolute number of the Delawares, but the relative proportion which they bore to the whole number of Cherokee citizens. In that proportion the fund of $600,000 was to be distributed and the amount of their share in it ascertained. The enumeration upon which the court acted is as follows:
Cherokees by blood. 21,232
Adopted whites. 2,011
Delawares. 759
Shawnees. 624
Creeks. 82
Choctaws. 11
Negroes. 2,052
Total. 26,771
And this basis was agreed upon by both parties.
The change of the Delawares now proposed from 759 to 871 is founded upon another enumeration or census of the tribe which did not extend to the Cherokees. The question before the court on the first hearing of the case and the question now brought before it by this motion is simply this: What proportion does the number of the Delawares bear to the whole number of the nation1? If there was an under enumeration of them before, there may have been an under enumeration of the others, and determining this will be trying a new issue of fact. It indeed appears in the case of the freedmen now before the court that they do not rest content with the enumeration above given of 2,052, but claim a number exceeding 4,000. It is, therefore, possible that if the whole account were reopened the proportionate part of the Delawares would be found to be less than the amount which has been awarded to them. Be that as it may, the court does not deem it proper to revise one side of the account without revising the other, and the number *177 heretofore ascertained as the basis of calculation must stand. The change asked for is not the correction of an arithmetical mistake or clerical error, but a change of the basis upon which the recovery rests.
4. The complainants also ask to have the decree amended by inserting a recovery for interest on the several sums awarded to them, running from the time when the Cherokee Nation made distribution of the several funds among those who were “ Cherokees by blood.”
The court is of the opinion that this request can not be considered, for the reason previously given, viz, that it was not made when the case was previously before the court and was not included in the decree which the Supreme Court has affirmed. It is a legal question not free from doubt whether interest can be recovered in this case; whether the jurisdictional act authorizes the court to award damages in the form of interest; and it is certainly a question which should have been submitted to the Supreme Court if the complainants had insisted upon the right.
The order of the court is that the motion of the complainants to rectify the decree filed February 1, 1895, be overruled and that the following final decree be entered:
This cause coming on to be heard on the petition of the complainant herein for further decree; and an agreed state of facts, proofs, and arguments having been submitted to the court and duly considered; and it appearing to the court that during the pendency of the original suit herein the Congress of the United States, by an act entitled “An act making appropriations for current and contingent expenses and for fulfilling treaty stipulations with Indian tribes for the fiscal year ending June 30, 1894,” approved March 3,1893, duly provided for the payment to the Cherokee Nation of the sum of $8,595,736, the same to be in full consideration for all the right, title, interest, and claims which the said nation might have in the lands lying west of 96° west longitude, commonly known as the “ Cherokee Outlet;” and it further appearing that of the said sum of $8,595,736 the sum of $295,736 was appropriated by said act out of the Treasury of the United States and made immediately available, and that the balance thereof, to wit, $8,300,000, was made payable in five annual installments, the first to be *178 payable on tbe 4th day of March, 1895, and all deferred payments to bear interest at the rate of 4 per centum per annum, and that a sufficient amount of the money provided in said act to be paid for the purchase of said Cherokee Outlet to pay the Delawares and Shawnees their pro rata share of said Outlet should remain in the Treasury of the Uuited States until the status of said Delaware and Shawnee Indians should be determined by the courts of the United States before which their suits were then pending, and also a sufficient amouiit to pay the freedmen who are Cherokee citizens as the same shall be determined by the courts; and the said act further providing that if the legislative council of the Cherokee Nation should deem it more advantageous to their people they might issue a loan for the principal and interest of the deferred payments, pledging said amounts of interest and principal to secure payment of such debt; and it appearing to the court that the said Cherokee Nation has borrowed from the Union Trust Company of New York the sum of $6,640,000, and pledged as security therefor the four payments as aforesaid falling due after the 4th day of March, 1895, and that the payment falling due on the said 4th day of March, 1895, amounting to $1,660,000, has been retained in the Treasury of the United States from which to pay the Delawares, Shawnees, and freedmen as hereinbefore set forth; and it further appearing to the court that the said $6,640,000 so borrowed by the said Cherokee Nation has been distributed to the Cherokee citizens of Cherokee blood to the exclusion of the complainants, the Delawares:
Now, therefore, it is adjudged and decreed that the decree in this suit, entered the 22d May, 1893, be extended and applied to the fund above described now retained by and in the custody of the United States awaiting the event of this and other suits as above recited and set forth; and that the judgment heretofore entered, together with the costs of the suit then awarded against the Cherokee Nation, be paid by the respondents, the United States, out of that fund.
And it is further adjudged and decreed that in addition to the judgment heretofore entered in this suit for $17,011 and $1,701.10 costs, the complainants, the Delaware Indians, be also adjudged and entitled to participate in the distribution of the fund of $6,640,000 above referred to and described, and that such distribution be based on the agreed census of native and adopted citizens as heretofore ascertained and agreed upon, *179 to wit, 26,771, being taken as tbe whole number of Cherokee citizens of all descriptions, and the said Delawares being taken as 759 of said whole number; and that the fund so ascertained, to wit, the sum of $188,254, be paid by the treasurer of the Cherokee Nation, or by the Secretary of the Interior of the United States, out of the moneys reserved by and in the custody of the United States, as aforesaid, to the individual Delawares per capita who would have been entitled to the same if the unconstitutional restrictions and discriminations above referred to had not existed in the distribution of the said fund of $6,640,000 to the exclusion of the complainants herein.
And it is further adjudged and decreed that there be allowed to the attorney and solicitor of the complainants, as additional compensation, 6 per cent of the additional amount of $188,254, now adjudged to the complainants, which additional compensation is hereby ordered to be paid upon the adjustment and receipt of the amounts as ascertained and paid over to, or set apart for, the said complainants.
And it is further ordered and decreed that whereas the respondent, the Cherokee Nation, has interposed no defense to the application of the complainants for the amendment and extension of the decree and the recovery of the additional amount now awarded to them, therefore that the additional compensation of 6 per cent hereby allowed be apportioned to and paid by the complainants, the Delaware Indians, and retained from the moneys awarded to them, as above set forth, to wit, the sum of $11,295.24.
And it is further ordered aud decreed that if the judgments hereinbefore decreed, or either of them, be not carried out and satisfied within six months from the time a copy of these decrees shall have been served on and delivered to the principal chief of the Oherokees and the Secretary of the Interior of the United States, the complainants may apply to the court for such further order, relief, or remedy as may be meet.
And it is further ordered and decreed that if the judgments hereinbefore awarded in favor of the complainants be satisfied out of the moneys in the possession and custody of the United States belonging to the Cherokee Nation, the payments shall be made by the Secretary of the Interior to the complainants per capita, pursuant to the provisions of the eleventh section of the act of March 2,1895.